UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------- x
PAUL WALTON,

              Plaintiff,

      -against-

DR. STEVEN RUBEL, M.D., DR.
ALAN PERRY, PH.D., and DR.
CLAUDE (OR CLAUDIA)
FRANCOIS,

              Defendant.
----------------------------------------------- x

MEMORANDUM & ORDER

16-CV-1989 (ENV)(LB)

VITALIANO, D.J.

On April 20, 2016, *pro se* plaintiff Paul Walton brought this action, pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Compl., ECF No. 1. After filing an amended pleading in accord with leave granted to him in an order dismissing other claims, Mem. & Order, Aug. 9, 2016, ECF No. 11, Walton's remaining claims name only defendants Dr. Steven Rubel, Dr. Alan Perry and Dr. Claude Francois and do so in their individual and official capacities as employees of Kings County Hospital. Am. Compl., ECF No. 14. Those defendants now move to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6). Their motion is unopposed. For the reasons stated below, and following a *sua sponte* merits review seeking the strongest opposition to it, defendants' motion to dismiss is granted in its entirety.

## Background

Walton's original complaint alleged that his rights were "violated" at St. John's Episcopal Hospital ("St. John's"), when he did not receive the "proper medication and medical care." Compl. at 4. He named two attorneys from the Legal Aid Society, Katie Ringer and



1

David Wicker, and St. John's as defendants. *Id.* at 3. By its Order, *supra*, Walton's request to proceed *in forma pauperis* ("IFP") was granted, his request for the appointment of counsel was denied and his complaint was dismissed with leave to amend his pleading "to state valid claims concerning the events at St. John's," with facts sufficient to satisfy the pleading rules. Mem. & Order, at 4.

Walton filed an amended complaint on September 12, 2016. Am. Compl. This pleading dropped claims against St. John's and Wicker, but added Queens District Attorney Richard Brown, three security hospital treatment assistants and Drs. Rubel, Perry, and Francois as defendants. *Id.* at 5. Essentially, Walton claims that, while attempting to fill medication at St. John's on January 21, 2015, security guards used excessive force restraining him, slandered him and caused his purportedly wrongful arrest and unlawful detention on Rikers Island on charges of assault, attempted assault, and harassment. *Id.* at 1-2.

He alleges, additionally, that, at a hearing on January 22, 2015, following his arrest, Legal Aid Society attorney Ringer improperly requested the court to order an involuntary examination of his mental capacity, pursuant to N.Y. C.P.L. 730.30, which, he claims was in violation of his constitutional rights. *Id.* at 1-3, 7. According to Walton, Dr. Rubel, a psychiatrist, and Drs. Perry and Francois, both psychologists, "work regularly at Kings County Hospital"[1] and conspired with Ringer to "unlawfully detain [him] wrongfully by bogus C.P.L. 730.30 exams that were all fraudulent in their conclusions." *Id.* at 2-3, 6. Walton's amended complaint stated further:

---

[1] Kings County Hospital is operated by the Health and Hospitals Corporation of the City of New York. *See, e.g., Dove v. City of New York*, No. 03-CV-5052 JFB LB, 2007 WL 805786, at *1 (E.D.N.Y. Mar. 15, 2007).

2

> I am suing for negligence & medical malpractice due to this Dr. Steven Rubel & Dr. Alan Perry, & Dr. Claude (or Claudia) Francois who all either wrongfully & unnecessarily committed libel, fraud, & slander by claiming that I needed C.P.L. 730.30 exams in the 1st place & falsely ruled that I failed these & could not assist my atty [sic] in my own defense.

*Id.* at 3.

In a Memorandum and Order, dated December 5, 2016, Walton's claims against all defendants except Drs. Rubel, Perry, and Francois were dismissed. Mem. & Order, at 4, Dec. 5, 2016, ECF No. 17. Walton's § 1983 claims concerning the allegedly fraudulent reports and his resulting inability to assist in his own defense and his confinement claims were, with solicitude, permitted to continue against the doctors.[2]

### Standard of Review

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must set forth sufficient factual allegations that, when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007)). In deciding such a motion, the district court must "accept [] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, the Court need not credit any "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. "Determining whether a

---

[2] The Court's December 5, 2016 Order, however, did dismiss Walton's conspiracy claims against the doctors. *Id.* at 5.

complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Of course, when considering a Rule 12(b)(6) motion brought against a *pro se* litigant, the complaint and related filings of the *pro se* plaintiff must be liberally construed and held to a less rigorous standard of review than pleadings drafted by an attorney. *Forney v. Forney*, 96 F. Supp. 3d 7, 10-11 (E.D.N.Y. 2015). In the Second Circuit, it is well established that, to satisfy the requirement of liberality, reviewing courts must construe "'pleadings and briefs submitted by *pro se* litigants, [and] read[] such submissions to raise the strongest arguments they suggest.'" *Id.* (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)). Further, a district court cannot grant a Rule 12(b)(6) motion merely on the basis that it is unopposed, "but must review the merits and decide if the movant has met his burden." *Skrable v. Aetna Ins. Co.*, 2010 WL 4053981, at *1 (S.D.N.Y. Sept. 22, 2010) (citing *McCall v. Pataki*, 232 F.2d 321, 322-23 (2d. Cir. 2000) ("If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal.")).

Discussion

I. Individual Capacity Claims

The objective "of § 1983 is to deter public officials from violating citizens' federal rights and to compensate victims of such official wrongdoing." *Weaver v. Brenner*, 40 F.3d 527, 532 (2d Cir. 1994). Section 1983, however, was not intended to abrogate common-law immunities, *Rehberg v. Paulk*, 566 U.S. 356, 361, 132 S. Ct. 1497, 1502, 180 L. Ed. 2d 593 (2012); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 258, 101 S. Ct. 2748, 2755, 69 L. Ed. 2d 616 (1981), and, thus, state officials are entitled to certain immunities when damages arise pursuant to official acts, *see Scotto v. Almenas*, 143 F.3d 105, 110 (2d Cir. 1998). While most officials

4

receive qualified immunity, a limited number are granted absolute immunity for their official acts. *Id.*

To determine the scope of immunity available, courts engage in a functional approach by "consult[ing] the common law to identify those governmental functions that were historically viewed as so important and vulnerable to interference by means of litigation that some form of absolute immunity from civil liability was needed to ensure that they are performed 'with independence and without fear of consequences.'" *Rehberg*, 566 U.S. at 363, 132 S. Ct. at 1503 (quoting *Pierson v. Ray*, 386 U.S. 547, 554, 87 S. Ct. 1213, 1218, 18 L. Ed. 2d 288 (1967)). "The proponent of a claim to absolute immunity bears the burden of establishing the justification of such immunity." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432, 113 S. Ct. 2167, 2169, 124 L. Ed. 2d 391 (1993).

Within these guideposts, the Second Circuit has held that "[c]ertain actors associated with the courts enjoy absolute, quasi-judicial immunity from suit because such immunity is 'necessary to protect the judicial process.'" *Gross v. Rell*, 695 F.3d 211, 215 (2d Cir. 2012) (quoting *Burns v. Reed*, 500 U.S. 478, 485, 111 S. Ct. 1934, 1938, 114 L. Ed. 2d 547 (1991)). Accordingly, a private individual "may be afforded the absolute immunity ordinarily accorded judges . . . if his role is functionally comparable to that of a judge . . . or if [his] acts are integrally related to an ongoing judicial proceeding." *Mitchell v. Fishbein*, 377 F.3d 157, 172 (2d Cir. 2004) (internal citations and quotation marks omitted).

In *Hili v. Sciarrotta*, the Second Circuit extended this quasi-judicial immunity to probation officers preparing and submitting presentence reports for sentencing purposes. 140 F.3d 210, 213 (2d Cir. 1998). The court reasoned that:

5

> [I]n light of the desirability of having such reports provide the courts with all information that may be relevant to sentencing, and in light of the availability of procedural mechanisms for the defendant to challenge those aspects of the reports that he feels are inaccurate, federal probation officers are granted absolute immunity from suits for damages in connection with their preparation and submission of such reports to the courts.

*Id.*

District courts in this circuit have, in a similar fashion, applied quasi-judicial immunity to medical professionals who conduct court-ordered examinations and prepare reports pertaining to a defendant's competency to stand trial. *See McKnight v. Middleton,* 699 F. Supp. 2d 507, 526 (E.D.N.Y. 2010) ("Absolute immunity has extended to . . . court-appointed doctors and psychiatrists . . . ."), *aff'd,* 434 F. App'x 32 (2d Cir. 2011); *Best v. Schneider,* No. 12–CV–6142 (NGG)(MDG), 2015 WL 5567062, at *24 (E.D.N.Y. Sept. 21, 2015); *Inesti v. Hicks,* No. 11 Civ. 2596 (PAC)(AJP), 2012 WL 2362626, at *16 (S.D.N.Y. June 22, 2012) (R. & R.), *adopted by* 2012 WL 3822224 (S.D.N.Y. Sept. 4, 2012); *Hunter v. Clark,* No. 04-CV-0920SC, 2005 WL 1130488, *1-2 (W.D.N.Y. May 5, 2005) (finding that absolute immunity attached to court-appointed psychiatrists who, after examining the plaintiff in a criminal case, submitted a report to the court); *Henderson v. Heffler,* No. No. 07–CV–0487C, 2010 WL 2854456, at * 3 (W.D.N.Y. July 19, 2010) ("Absolute immunity has been extended to court-appointed social workers, doctors, psychiatrists, and evaluators . . . ."); *Kalman v. Carre,* 352 F. Supp. 2d 205, 207-09 (D. Conn. 2005) (collecting cases from other jurisdictions in which psychiatrists performing court ordered evaluations were found to have absolute judicial immunity).

Even affording the most liberal construction to Walton's pleading, he fails to state a claim upon which relief may be granted against defendants in their personal capacities because they are absolutely immune from suit. Walton alleges that his former attorney "wrongfully" requested that the court order a CPL § 730.30 examination and that the resulting examinations conducted by defendants "were all fraudulent in their conclusions." Am. Compl. at 2. However, under New York law, when a court believes that a defendant may be incapacitated, it "must issue an order of examination." C.P.L. § 730.30(1). Therefore, the examinations conducted by defendants, which comprise the wrongful conduct Walton alleges, would have been, and were, conducted pursuant to a court order. Given the integral and inseparable connection of these examinations to the in-court competency proceeding that sanctioned them, Drs. Rubel, Perry and Francois are entitled to immunity from suit. *See McKnight v. Middleton,* 699 F. Supp. 2d at 526.

II. Official Capacity Claims

Recognizing that form should not be exalted over substance, a § 1983 suit against an individual in their official capacity, "'generally represent[s] only another way of pleading an action against an entity of which an officer is an agent,'" and, thus, "should be treated as [a suit] against the [entity employing the state actor]." *Hafer v. Melo,* 502 U.S. 21, 25, 112 S. Ct. 358, 361, 116 L. Ed. 2d 301 (1991) (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.,* 436 U.S. 658, 690, n. 55, 98 S. Ct. 2018, 2035, n. 55, 56 L. Ed. 2d 611 (1978)). In turn, because *respondeat superior* theories of liability do not apply in "color of state law" claims, the entity cannot "be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *See Monell,* 436 U.S. at 961. Put differently, a § 1983 plaintiff must allege that "the violation of his constitutional rights resulted from a municipal custom or policy." *DeCarlo v. Fry,* 141 F.3d 56, 61 (2d Cir. 1998).

Here, the Court cannot discern even a conclusory suggestion that defendants' allegedly fraudulent reports stemmed from any custom or policy of the hospital system. As a consequence, assuming for argument sake that quasi-judicial immunity does not bar these official capacity claims, Walton's claims against defendant doctors in their official capacities must also fail. *See Monell*, 436 U.S. at 961, 98 S. Ct. at 2036; *see also Best v. Schneider*, No. CV–12–6142 (NGG)(MDG), 2014 WL 10417046, at *6 (E.D.N.Y. Sept. 10, 2014) (R. & R.), *adopted in relevant part by* 2015 WL 5567062, at *23 (dismissing plaintiff's complaint against individuals in their official capacity when he "failed to allege any facts suggesting that these defendants violated his constitutional rights pursuant to a policy or custom"). Indeed, Walton grounds his allegations in the particular incidents involving his competency evaluation and, thereby, dooms his claim.

III. The *Rooker-Feldman* Doctrine: Another Bar to Walton's Claims

Furthermore, under the *Rooker-Feldman* doctrine, the Court lacks jurisdiction to hear Walton's claims. The rule, which is rooted in the cases of *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983), prohibits federal district and appellate courts "from exercising what amounts to appellate jurisdiction over a state court judgment." *P.A. v. City of New York*, 44 F. Supp. 3d 287, 297 (E.D.N.Y. 2014). This rationale stems from 28 U.S.C. § 1257(a), under which only the Supreme Court has the authority to review state court decisions.[3] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92, 125 S. Ct. 1517, 1526, 161 L. Ed. 2d 454 (2005).

---

3   Federal habeas corpus jurisdiction over petitioner in state custody is an exception to this principle. *See Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 n.5 (2d Cir. 2005).

The Second Circuit has explained that four conditions must be met for the *Rooker-Feldman* doctrine to preclude federal review:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced—i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation. The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive.

*Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (internal alterations and quotations omitted). "[A] party is not complaining of an injury 'caused by' a state-court judgment when the exact injury of which the party complains in federal court existed *prior* in time to the state-court proceedings, and so could not have been 'caused by' those proceedings." *McKithen v. Brown*, 481 F.3d 89, 98 (2d Cir. 2007).

Although not articulated in so many words, Walton appears to be attacking his competency determination by claiming that the doctors "committed libel, fraud [and] slander," in expressing their view that Walton required the 730.30 examinations in the first place and their ultimate "fraudulent" determination after the examination that he was, indeed, incompetent. Am. Compl. at 2, 3. According to Walton, the state court judge's improper reliance on the reports resulted in his being wrongfully found incompetent, unable to assist in his own defense and confined at a psychiatric center. Am. Compl. at 3.

Plaintiff's claims meet all the *Hobolck* factors. First, Walton clearly "lost," from his perspective though not his defense lawyer's, at the competency hearing, which determined he

was incompetent. Second, the injury Walton complains of, the state court's reliance on the doctors' report in finding Walton incompetent and his subsequent detention, were caused by the state court's decision. Importantly, that injury did not exist prior to the state court proceedings. *See McKithen*, 481 F.3d at 98. Third, Walton's claims would require this Court to review the state court's determination as to his competency at the time of his trial. Finally, the competency hearing appears to have occurred in January 2015, Am. Compl. at 7, and this case was filed in April 2016. Essentially, Walton is seeking precisely what he is not entitled to seek, the redress of injuries caused by the state court's order of incompetency.

In sum, under the *Rooker-Feldman* doctrine the Court lacks the jurisdiction to hear Walton's claims that would require it to review the competency proceedings in the state court and effectively reverse that court's determination. But, again, even assuming that *Rooker-Feldman* did not bar his claim, Walton has pleaded nothing in his amended complaint to show, or anything that suggests he could show, that, for the reasons stated above, either in their individual or official capacity defendant-doctors are liable to him. Walton's § 1983 claims against them, as a result, must be dismissed with prejudice.

## Conclusion

For the reasons set forth above, defendants' motion to dismiss all federal claims against them is granted in its entirety. Having dismissed all federal claims against all defendants, the Court declines to exercise supplemental jurisdiction over any remaining state law claims. 28 U.S.C. § 1367(c). Those claims are dismissed without prejudice and with leave to replead in a state court of appropriate jurisdiction.

Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and, therefore, IFP status is denied for purpose of an

appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920, 8 L. Ed. 2d 21 (1962).

The Clerk of Court is directed to enter judgment accordingly, to mail a copy of this Memoranadum and Order to plaintiff and to close this case.

So Ordered.

Dated: Brooklyn, New York
       June 14, 2018

                                          /s/ USDJ ERIC N. VITALIANO
                                              ERIC N. VITALIANO
                                              United States District Judge